Thank you, Your Honors. May it please the Court. The Board correctly found most of the claims of the 309 patent obvious of Erswisher and Neumeier, but it erred in allowing the stability pattern claims to survive. And I'd like to begin with the two central undisputed facts of this case. First, it's undisputed that Neumeier discloses a mode having the same hydraulic arrangement shown in Figure 1 of the 309 patent, with four-way positive coupling between four identically designed lifting cylinders. The Board found this and Wirtgen doesn't dispute it. It's also undisputed that the hydraulic arrangement of Figure 1, assuming you don't add anything to it or modify it, results in the four-sided stability pattern of Figure 7, with the only possible exception being minor unavoidable deviations. Again, Wirtgen admits this in its red brief and its expert admitted it at its deposition. Basically, the arrangement of Figure 1 results in the stability pattern of Figure 7. And if I could ask Your Honors to please refer to Appendix Page 561. I want to make sure that this important admission of their expert does not get lost in the shuffle or overlooked. On the left on Appendix Page 561 is Figure 1 of the patent. Wirtgen's expert at his deposition was asked to identify the midpoints between the wheels and then connect them to form a four-sided diamond and he did so. He was then asked if Figure 1 will result in that four-sided stability pattern and he said yes, it would, assuming you don't add any components to it. He was then asked if Figure 1 could result in any other shape than that and he said no, again, assuming you don't add any components to it. So that was Caterpillar's inherency argument in a nutshell. Neumeier discloses the hydraulic arrangement of Figure 1 would necessarily result in the four-sided stability pattern of Figure 7 including the widest transverse dimension being located midway between the front and the rear wheels. Now, contrary to the board's finding, this evidence is highly probative of inherency. In contrast, there's no substantial evidence supporting the opposite conclusion, that a structure that's identical to Figure 1 in every material respect and operates exactly as the patent describes for Figure 1 can somehow result in a stability pattern substantially different than Figure 7. Mr. Barney, this is Jeff Turner. Can I just ask to keep clear? So I think you have an argument about this stability pattern but there's also the requirement that the widest point or the widest sort of transverse line has to fall within the footprint of the milling cylinder. If the board has substantial evidence to find failure proof on the second, the first doesn't matter, right? That's correct, Your Honor, and I'm happy to jump to that second point. And just tell me why it is more complicated than the following. We just don't have the information you did not put on the proof about the actual distances involved and the centrality or off-centrality of the milling cylinder. And therefore, there's just a failure of proof that this line falls into that footprint. I'm happy to address that, Your Honor. The problem on the footprint limitation is it's not simple. It's not as simple as that. The problem is if the board applied the wrong legal standard, and I'd like to explain. So if you would just accept for this, you know, I'm skipping a few things here to address your question, but, you know, we argued that Neumeier as a single reference establishes the shape of the pattern, including the widest transverse dimension located midway between the wheels or caterpillars. At that point, this additional requirement that the footprint of the working rotor overlaps that widest dimension, we argued that as a matter of obviousness, not inherency. Now, the board acknowledged, and this is the important part, the board acknowledged that Swisher discloses a rotor located about in the middle between the front and the rear caterpillars. But more importantly, it found dependent claims 21 and 33 obvious over Swisher and Neumeier. Those claims specifically require a rotor located, and I'm quoting now from those claims, located centrally between the front and the rear wheels or caterpillars. So the board found that it was obvious to center the rotor in Swisher centrally between the front and the rear wheels or caterpillars. Workin doesn't dispute that finding on appeal. That finding is law of the case. But for the footprint limitation, the board applied a legal error. The board applied inherency principles and found that the drawings in Swisher don't establish the rotor in sufficient detail for Caterpillar to carry its burden. But remember, the board had already found that it was obvious to locate the rotor centrally between the front and the rear caterpillars. That's claims 21 and 33, undisputed finding of the board. So it's clear that the board applied a different standard to this footprint requirement. The board said that our burden was to show that Swisher necessarily overlaps the widest transverse dimension. And it repeatedly emphasized that mere possibilities and approximations aren't enough. Those are inherent. I'm sorry, did you argue some kind of obviousness theory not dependent on some sort of inherency notion for the claims that are now at issue? Yes, Your Honor. We presented our argument as a single reference inherency for a Neumeier, for the shape. And then for the footprint, we argued that it would be obvious. I would point for instance, I mean, you can look at our oral argument. You know, appendix page 113, we explained, you know, that it's that the middle of the machine is the most obvious place to put the rotor. And so even if there were some quibble about exactly where it is, the most obvious place to put it is in the center. And was that in your petition? In the petition, we argued at... Excuse me. In the petition at appendix page 494, we argued that the combination of Swisher and Neumeier teaches or suggests this feature of claim 17. So we raised the obviousness standard. Our specific argument on page 498, appendix page 498 was that because Swisher's drum is located about midway between his track assemblies, and because the widest transverse dimension using Neumeier's positive coupling is located about halfway, a person of ordinary skill in the art would recognize that the widest transverse dimension would overlap the footprint of Swisher's... But you relied on essentially figure one and the expert testimony, right? That's correct, Your Honor. And that's all that was there. And the board specifically found that figure one wasn't persuasive because it wasn't drawn to scale and found that it did not credit the testimony from your experts. So, I mean, how is that a legal error? Because the board, when they said, we don't think there's enough precision and figure... Well, no, actually, we relied on all the figures of Swisher, Your Honor. But the board said there's not enough precision in these figures for us to know exactly where the rotor is located. And yet at the same time, it found that it was obvious to put it in the middle. That's a specific finding the board made to claim 21 and 33. So that shows you that it was applying a different standard to the footprint requirement. It was requiring us to show the footprint requirement with more precision than mere obviousness. And we believe that's where the error is. We shouldn't be required to show that the footprint requirement is inherent. It only needs to be obvious. If Swisher, excuse me, if Neumeier discloses every single aspect of figure one of the 309 patent and operates exactly the same way as Neumeier, it doesn't work and doesn't dispute. And we showed testimony that figure one of the 309 patent yields figure seven, which has the widest transverse dimension midway between the wheels. At that point, combining Swisher and Neumeier, all you have to show is that it was obvious to put the rotor midway between the rear and the front wheels, which we showed. And by the way, that's exactly what the patent teaches. So we showed that it was obvious in Swisher to do exactly what the 309 patent teaches, which is to position the rotor midway between the front and the rear caterpillars so that it overlaps that widest transverse dimension. So we believe the error here is that the board applied inherency principles. It essentially treated the footprint limitation like the limitation in par pharmaceuticals, where it needed to be proven by inherent obviousness because in par pharmaceuticals, that particular limitation didn't exist in any single reference, either expressly or inherently. But the correct standard here is the one set forth in In Re Napier, where one limitation is shown through single reference inherency, and the remaining limitations are taught or reasonably suggested by a second reference. We believe that's the situation here. Neumeier inherently discloses the shape, which is figure seven, including the widest transverse dimension midway between the wheels, but the positioning of the rotor relative to that pattern is expressly taught or fairly suggested by Swisher. It's also an undisputed finding now that Neumeier, excuse me, that Workin hasn't disputed in this appeal, and we believe as a matter of obviousness, that shows the footprint limitation. That's all I have, Your Honors, unless you have other questions. No, we'll hear from Mr. Powers. Thank you. Thank you, Your Honor, and may it please the Court. Substantial evidence supports the Board's opinion that Caterpillar failed to prove Claim 1729 and their dependent claims would have been obvious. On the facts, the Board found that Caterpillar failed to show that the stability pattern in the Swisher-Neumeier combination was inherently four-sided. On the facts, Caterpillar failed to show the inherent location of the widest transverse dimension of the stability pattern in the Swisher-Neumeier combination, and Caterpillar failed to show that the widest transverse dimension of the stability pattern at that inherent location falls within a footprint of the working roller in the combined machine. Caterpillar needed all three to prevail, and it failed on all three. But what's your response to the argument that as it relates to the footprint, it was talking about obviousness and not inherency? Well, Your Honor, Caterpillar, first of all, the Board did not hold Caterpillar to an inherency standard when it addressed the footprint of Swisher's rotor. In fact, Caterpillar's evidence relying on figures one and three from Swisher, as you pointed out, Judge, there's nothing in those figures that shows where the rotor actually is. Nothing in the record supports Caterpillar's allegation that the Board appeared to apply a heightened inherency standard for the location of Swisher's rotor. The rotor itself isn't even visible in any of figures one through three. Well, where can you point to me where the Board addressed Swisher in the context of an obviousness-type analysis? Yes, Your Honor, that's in the appendix on pages 53 to 55. If we go there, we see that the Board used inherency when it was applying an inherency standard to Caterpillar's arguments, but it did not use inherency when it evaluated-the word inherency or inherency principles when it evaluated Caterpillar's arguments regarding Swisher's rotor. So the Board knew how to say inherency when it applied inherency and it just simply didn't hear. But it didn't actually say obviousness, did it? It certainly reached the conclusion that Caterpillar hadn't kept its burden-or met its burden. I'm not sure that it used the term obviousness, but it evaluated Caterpillar's evidence and its lack thereof through the lens of a traditional obviousness analysis and reached the finding that Caterpillar simply didn't carry its burden because it relied on figures that were, A, not drawn to scale and, B, don't even show the working rotor. Another problem with Caterpillar's evidence that Virkin pointed out was that Caterpillar's petition didn't even mention the diameter of Swisher's rotor. And, of course, the diameter of Swisher's rotor is central to understanding what the footprint of that rotor is. Another thing, Your Honor, just about the claims in general-Caterpillar likes to focus on the term footprint and call it the footprint limitation. But really that limitation is-the whole claim says, has a four-sided stability pattern having a widest transverse dimension transverse to the forward direction of the chassis, which widest transverse dimension falls within a footprint of the working roller or rotor? So you need two things for that second part of the limitation. You need the widest transverse dimension falling within a footprint of the working roller or rotor. And if we could just go to Appendix 561, where Caterpillar took you earlier, and a drawing that was made by Caterpillar there, that is not proof of the widest transverse dimension. In that deposition, Dr. Lumpkins was asked to draw midpoints between the wheels and to draw a line intersecting the widest transverse points there. That is not evidence of the widest transverse dimension as an inherent principle. He was simply just connecting dots in that exercise there. And Caterpillar simply reprises evidence that the board considered and rejected on the facts. Also the board noted that Mr. Laibus's opinion testimony was simply unsupported. At Appendix 55, the board said, petitioner's evidence, essentially the opinion testimony of Mr. Laibus is unsupported by probative facts or data. And indeed, Mr. Laibus, Caterpillar's expert, in his declaration, did little more than just parrot Caterpillar's petition and offered no underlying evidence of the claimed shape or location of the stability pattern that was known or understood in the art. Prior or otherwise, all he did was attempt to use the 309 patent against itself, which this court has cautioned is inappropriate, especially in an obviousness analysis. And as I mentioned, the board, again, at Appendix 50, concluded this opinion testimony is unsupported by any facts or data. It provides no analysis as to why it is linked to vehicle design. Can you address the point that Mr. Barney made about the board explicitly adopting the central arrangement for purposes of Claim 21? Yes, Your Honor. I think it was Claim 22. Was it 22? Okay. I could be wrong. But regardless, I think there, the board, under the broadest reasonable interpretation standard that was in play at the time, simply thought that that limitation meant that the rotor was arranged between the front and rear legs. And that isn't enough to get us here to the limitations at issue in Claim 17 and 29 and their dependent claims. So Caterpillar had to show the widest transverse dimension. And even the alleged admission that was alluded to by Virkin's expert, Dr. Lumpkins, where he said, under certain circumstances, there's a four-sided stability pattern present in Neumeyer, that says nothing about where the widest transverse dimension would be. So Caterpillar simply fails there. Your Honor, if I could move on to simply going back to Swisher's footprint, it essentially came down to a battle of the experts. And at Appendix 1035 to 1041, Dr. Lumpkins' testimony there showed that there were several problems with making the kind of assumptions that Caterpillar's evidence required based on simply the figures in Swisher, figures one through three that it pointed to, and the statement that's in Swisher that only says, at best, that the rotor is positioned to be more closely in line with the center of gravity. But the center of gravity there doesn't have anything to do necessarily with the middle of the machine, the midpoint of the machine. And Caterpillar made this false equivalence between the center of gravity and the midpoint. And it simply just isn't true that Swisher provides any more detail about its figures than that, in what I've said, on the point of where the rotor is actually located. Do you want to save time for your cross-appeal? Yes, Your Honor. I'd like to move on to the cross-appeal. Okay. So first, I'd like to start with the Swisher-Newmeyer combination that Caterpillar alleged. Caterpillar introduced its proposed combination in the petition by acknowledging that Swisher, the primary reference, requires individual leg adjustment of its hydraulic cylinders in order to achieve proper cutting orientation of the planing assembly. And that's at Appendix 467. Next, Caterpillar argued that a POSA would have been motivated to replace Swisher's leg assemblies with those of Newmeyer, because Newmeyer allegedly addresses this requirement of individual adjustment head-on. And that's at Appendix 467. And I'm sorry, when you say addresses it, what you mean is that Newmeyer provides for single-wheel adjustment. That is what Caterpillar alleged, Your Honor. Right, at 467. Yes, repeat it. That's exactly right. But during trial, both experts agreed that Newmeyer has no ability to individually adjust a single cylinder in isolation. And we briefed that substantially at red brief at 66 and gray brief at 4, citing underlying evidence where both experts agree that Newmeyer simply has no ability to do that. What Newmeyer does is it can only adjust its legs in pairs. So Caterpillar even admits this now, that Newmeyer doesn't disclose individual adjustment of isolated cylinders, and that's at their yellow brief at 42. The board split its analysis. I mean, there's claims 1 and 26 on the one hand, and then there's 11 through 13, 24 and 36 on the other. With respect to 1 and 26, wasn't one of the most – didn't the board reject your incompatibility argument because it found that there was nothing in the 309, at least as to those claims, that required proper grade and cross slope? Well, Your Honor, the problem with that is that the board relied on simply the language of the claims, but didn't hold Caterpillar to the rationale it put forth in the petition. The motivation to combine was certainly undergirded, pinned to Newmeyer's alleged ability to in isolation adjust a wheel to meet a need of the primary reference swisher. It did not. It was shown throughout trial that Newmeyer does not meet that need, and therefore Caterpillar's reason to combine was flawed, and the board erred legally by only looking at the claims limitation and not the reason to combine as articulated. What precedent says that if a factual assumption of the asserted motivation turns out to be false, that that matters even for purposes of a claim that doesn't require that fact? Well, Your Honor, I'd point to Intelligent Biosystems, where there the secondary reference could not meet the requirement of a primary reference, and the court said this is central to a finding of no motivation to combine, and that's exactly Virkin's argument, and that's at Intelligent Biosystems at 821 F. 3rd at 1368. So Intelligent Biosystems seems to be right on point here. And third, Your Honor, the board erred by relying on Swisher's pre-combination features to conclude to the extent that some grade and cross-slope control is required, Swisher clearly discloses it. The board said that at Appendix 34, but the problem is that when you replace Swisher's hydraulic arrangement with that of Newmeyer, you destroy Swisher's ability to control individual legs. And so the board made a mistake there. They erred legally. And finally, what's the problem with what the board did on Fri and 11 through 13, 24, and 36? Yes, Your Honor, well, there's two problems. The first one is that the board did not comply with APA standards. At Appendix 56 to 58, the board merely summarized the party's arguments and without anything more makes a conclusion. That runs afoul of In re Nu Ve. What's your substantive point? The substantive point is that both experts agreed that the figure included in Mr. Labus's declaration at Appendix 353 would not actually work to move one leg. Mr. Labus admitted on cross-examination that both hydraulic cylinder 1A and hydraulic cylinder 3A are being controlled. So two are going nowhere, and one is going up and one is going down in that arrangement that Mr. Labus put forth in his declaration. And so Caterpillar never provided an embodiment anywhere in this case that could control an individual leg. That's at Appendix 636 to 638. Am I... I believe I'm out of time, Your Honor. Yes, I think you are. Thank you. Okay, we'll go back to Mr. Barney. Thank you, Your Honor. Very quickly on the inherency point, one of the arguments that my colleague has made is that the board didn't actually apply inherency to the footprint limitation. I believe that is incorrect, and I would point Your Honors to first Appendix page 54 in the board's opinion where the board says that petitioner's evidence does not meet the high standard based on preponderance of the evidence applicable to this proceeding. The preponderance of the evidence does not establish that the Swisher-Newmeyer combination inherently has a foresighted stability pattern with a widest transverse of the forward direction which widest dimension falls within a footprint. So it included the footprint within the inherency. We also saw in Appendix page 54 where the board required us to show that the widest dimension falls within the milling drum's footprint. Again, that's a clear inherency requirement. And then as I also mentioned in my argument, you see the disparity between the board finding that it was obvious to censor the rotor, but then finding that we didn't present enough evidence as to the exact position of the rotor for purposes of the footprint limitation. So we think it's pretty clear the board did apply inherency principles to the footprint limitation. In terms of the diameter of the rotor, that's a red herring. There was no dispute in this case that these rotors are massive. And so there's no requirement that you figure out what the exact dimension of the rotor is to show overlap because once it's obvious to center the rotor and once it's shown that inherently the widest transverse dimension is in the center between front and rear wheels, it doesn't matter what the dimension of the rotor is. It's some non-zero dimension that is going to overlap that widest transverse dimension. With respect to their cross-appeal, Workin's motivation to combine argument... Well, first of all, do your honors have any other questions about the inherency points? Okay. With respect to Workin's cross-appeal, their motivation to combine argument hinges on two false premises. First, Workin contends that Swisher's grade and slope control requires the ability to evidence in the record of this. Even Workin's own experts stopped short of endorsing this theory as we explained at page 49 of our yellow brief. Swisher, if you read what it says about its control system... I'm sorry. Can you just address this? So your petition and the supporting declaration, and I guess I'm thinking particularly of page appendix 467, but I think there are others too, I think unmistakably say that a motivation to combine these things is dependent on preserving single wheel adjustment ability, which Swisher has, which you say, if you put in the thing you're going to get from Neumeier, you're still going to have because Neumeier has it. And yet, it turns out, as the evidence developed, Neumeier doesn't have it. And so if you swap that into Swisher, you now no longer have single wheel adjustment ability. You know what I mean by that. I know there's been a lot of ambiguity, but right, one wheel height control while not controlling the other three. And why does that factual failure not simply destroy the only narrative you produced for why a POSA would do this combination? I think you put your finger on it, Your Honor, there's ambiguity. And I think these... I'm sorry, I don't think that there's that there's ambiguity in what the evidence shows about Neumeier. Just this word individual adjustment has an ambiguity. That's why I'd like you to use the term single wheel adjustment, understanding it means move up and down one wheel, don't touch the other three. Sure. I'll answer the question as directly as I can. We never argued that Neumeier single wheel adjustment is necessary. We never argued that Neumeier has that single wheel adjustment. We argue that it has individual adjustment because it does. You go to you read Neumeier, and on appendix page 206, it very clearly says that it has individually adjusted hydraulic cylinders. It absolutely does have that. It's 100% true and accurate that it has individually adjusted cylinders. The problem here is... That it has something that it calls individual adjustment, which it turns out not to be single wheel adjustment. It's single. It's not single wheel adjustment. It's individual adjustment in the same sense that Workin has individual wheel adjustment. It means that each wheel has its own hydraulic cylinder, which can be separately controlled depending on the mode. You have to remember, Your Honor, there's different modes here. And so in order to be able to machine left and right and pitch it forward and aft, each cylinder has to be individually adjustable. That doesn't necessarily mean that you can isolate them and move them each without adjusting the other three. We never argued that second point. That's a straw man that Workin invented. We were very clear in our petition that for that ability, for the ability to isolate, you had to bring in another reference. That was our ground two argument. Our ground one argument never relied on this so-called individual adjustment. Workin is trying to take advantage of that term individual control. They've done that. They did that throughout the case below. The board admonished Workin on that, specifically admonished them and said that is not what Caterpillar is arguing because it isn't what we argued. We only argued that it had the same type of individual control that Swisher has. Because if you read Swisher, Swisher does its grade and slope control by adjusting pairs of cylinders. And even Workin's own attorney admitted that in oral argument. He admitted that when Swisher talks about individual control of cylinders, he's talking about, I think the word was not rolling, but he talked about it basically tilting left and right. That's what Swisher is talking about when he talks about individual controlled cylinders. So I just think this whole argument on Workin's part is based on taking advantage of an ambiguity in that particular term. Swisher does not, in fact, have the ability to do single wheel adjustment. Is that what you're saying? Well, there is an admission from Workin that it does. But my point is, if you read what Swisher is saying in terms of its grade and slope control, which is what Workin was capitalizing on, it controls grade and slope by tilting the machine left and right. And when it does that, it controls pairs of cylinders, not individual cylinders. There's just no evidence in the record at all that Workin requires the ability to individually isolate its legs in order to accomplish grade and slope control. There's just no evidence of that. That's something Workin argued, but they never presented any evidence on. Okay. Well, I think your time is up. Okay. Thank you, Your Honors. Okay. Mr. Powers, you have three minutes for rebuttal. Your Honors, Caterpillar repeatedly argued that Swisher discloses individual leg adjustment, meaning individual and isolated leg adjustment. And it's throughout Swisher, and Caterpillar concedes it now. For example, at Appendix 164, Column 7, Line 4, Swisher says, each leg assembly further serves to maintain the mainframe at a selectively variable height above the roadway, as is required for proper cutting orientation of the planing assembly. And that's the very quote that Caterpillar relied on in its petition to support the motivation to combine Swisher and Neumeier. Moving on to Column 8 of Swisher, Swisher says at Column 8, Line 40, extension and retraction of the left forward leg assembly, discussing only one leg assembly, may be required to alter the elevation and orientation of the planing assembly with respect to the roadway surface. It's accomplished by extension and retraction of a hydraulic cylinder. And Swisher goes on from there to describe in detail how Swisher can use individual isolated leg adjustment, and that is a feature in Swisher. And indeed, the board relied on that individual isolated leg adjustment in Swisher to conclude in its final written decision that to the extent some individual leg adjustment is required, Swisher teaches it, Swisher discloses it. And so, Your Honors, it's simply not true that Swisher doesn't require individual leg adjustment because it does. It says so multiple times. And Caterpillar used individual consistently to mean single wheel adjustment, for example, at Appendix 517. Although Neumeier discloses adjustment of individual cylinders, it does not explicitly illustrate the specific circuitry for such adjustment. Posita would, however, have been able to design a valve system that would have allowed raising or lowering of an individual hydraulic cylinder as disclosed by Neumeier. And then they bring in Frey at Appendix 517 and also Appendix 350 to 351, paragraph 259. That's their expert testimony on that point. So it's simply Caterpillar's motivation to combine. And I'd also just like to touch on a couple more points, Your Honor. First, Caterpillar has this new argument for the first time on this appeal that pairs of cylinders can satisfy the requirement of Swisher adjusting a pair of cylinders. But they never made that argument throughout the IPR. And as I mentioned previously, Swisher pretty clearly shows and discloses isolated individual adjustment of an individual cylinder. And that's how Catt understood Swisher when it put together its petition.